## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| MYRON MINTZ, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 12-cv-1174 |
| CATEPILLAR, INC. | ) |
| Defendant. | ) |

# O R D E R  &  O P I N I O N

This matter is before the Court on Plaintiff's "Motion To Vacate This Court's Order Granting Summary Judgment, To Allow Myron Mintz To And Until April 4, 2014 To Respond To The Motion For Summary Judgment And/Or To File A Motion To Reconsider" (Doc. 19) and "Motion To File Response To Motion For Summary Judgment Instanter" (Doc. 20).

Plaintiff filed a six count Complaint (Doc. 2) containing three counts of racial discrimination (Counts I, III, and V) based upon Plaintiff's receipt of poor performance reviews for the first, second and third quarters of 2011 and three counts of retaliation (Counts II, III and VI) based upon the same three quarterly reviews. On February 18, 2014, the Defendant filed a motion for summary judgment on all claims. (Doc. 17). A notice of electronic filing ("NEF") was created that same day alerting the parties and Court that such motion had been filed and apprising the Plaintiff of the date that his response brief was due. The deadline for Plaintiff to respond to Defendant's motion was March 14, 2014.

Plaintiff did not file a response brief. Nor did Plaintiff file a timely request for an extension of time to respond. After waiting almost two weeks with no docket activity at all, the Court proceeded to rule on the motion for summary judgment. Although the Court found that pursuant to Local Rule 7.1(D)(2), the failure to respond is deemed an admission of the motion (Doc. 18 at 1), the Court did not summarily rule in favor of Defendant; rather the Court considered the Plaintiff's claims on their merits. (*See generally* Doc. 18). The Court found primarily that Plaintiff could not demonstrate that he was meeting Defendant's legitimate work expectations (Doc. 18 at 13, 14 and 16), which was fatal to his claims.

Only after the Court entered summary judgment for Defendant on March 27, 2014, did Plaintiff act. A few hours after the Court entered its Order and Opinion (Doc. 18), Plaintiff filed a motion to vacate (Doc. 19). On April 4, 2014, Plaintiff filed a motion for leave to file his response instanter with a copy of the proposed response attached. (Doc. 20). The Court has reviewed Plaintiff's proposed response brief (Doc. 20-1). The Court has determined that even if filed, nothing in the proposed response brief would change the Court's conclusions reached in the March 27, 2014 Order and Opinion (Doc. 18). Consequently, for the reasons stated below, Plaintiff's Motion To Vacate This Court's Order Granting Summary Judgment, To Allow Myron Mintz To And Until April 4, 2014 To Respond To The Motion For Summary Judgment And/Or To File A Motion To Reconsider (Doc. 19) and Motion To File Response To Motion For Summary Judgment Instanter (Doc. 20) are denied.

## LEGAL STANDARDS

As an initial matter, the Court must decide what standard to apply to Plaintiff's "motion to vacate" because he cites no authority for the motion. Plaintiff requests that the Court vacate its Order and Opinion (Doc. 18) on the premise that he either forgot to file an agreed motion to extend the filing deadline or the Court's EF/CMF system was broken. Thus, Plaintiff is actually requesting that the Court grant him relief from a final judgment or order. Such request falls under the purview of Federal Rule of Civil Procedure 60(b). Therefore, the Court will treat the "motion to vacate" as if it were brought pursuant to Rule 60(b). Among the five categories of reasons that justify relief under Rule 60(b), paragraph (1)'s mistake, inadvertence or excusable neglect are the most appropriate.[1] Therefore, the Court will apply the standard of review applicable to Rule 60(b)(1) motions seeking relief from final judgments or orders based upon mistake, inadvertence, surprise, or excusable neglect.

"Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (citing *Karraker v. Rent–A–Center, Inc.*, 411 F.3d 831, 837 (7th Cir. 2005)). In the Seventh Circuit, a party seeking to vacate a default judgment under Rule 60(b)(1) bears the burden of showing: (1) "good cause" for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the

---

[1] The decision to treat Plaintiff's motion in conjunction with his motion to file response instanter (Doc. 20), as a Rule 60(b)(1) motion, is in harmony with Federal Rule of Civil Procedure 6(b)(1)(B), which allows a court to extend time for a litigant to act upon "motion made after the time has expired if the party failed to act because of excusable neglect."

original complaint. *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994). However, in the context of a lawyer's failure to file a timely response to a summary judgment motion, the Seventh Circuit has instructed courts to follow the criteria announced in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993). *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006). Those criteria include "all relevant circumstances surrounding the party's omission" such as "the danger of prejudice to the [defendant], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Raymond*, 442 F.3d at 606 citing *Pioneer*, 507 U.S. at 395.

The Court finds there was no danger of prejudice to Defendant because the Defendant apparently agreed to a three week extension upon Plaintiff's counsel's request. (Doc. 19 at 1).

However, the Court finds the length of the delay was unreasonable under the circumstances and negatively impactful of judicial proceedings. Plaintiff's neglect has already caused additional time and resources to be devoted to this matter. Moreover, Plaintiff has shown a disregard for this Court's Local Rules. Plaintiff's instant motion is in violation of Local Rule 6.1, which provides "Any party seeking an extension of time <u>for any reason</u> must file a motion for such extension before the original deadline. <u>Motions filed out of time will be denied</u>, unless the presiding judge determines that such denial would create a substantial injustice." Given that Plaintiff's motion for leave to file (Doc. 20) relates to a motion for summary

4

judgment, Local Rule 7.1(D) applies, as well. Local Rule 7.1(D) particularly notes that extensions of time for the filing of motions related to summary judgment are disfavored, and "such motions may be summarily denied unless they are filed within the original time as allowed by this rule or by the scheduling order."

Plaintiff's counsel did not file his motion until almost two weeks after the original deadline had expired. This is in violation of Local Rule 6.1. Given that Plaintiff's counsel has not given any explanation of why he could not comply with the original March 14, 2014 deadline in the first place, the thirteen day delay in requesting the extension and the general disfavor with which the Local Rules regard motions for extension of time to file Responses to Motions for Summary Judgment, the Court finds that, under the Local Rules, there will be no substantial injustice in refusing to allow Plaintiff's counsel to file his Response late.

Moreover, although the Court does not find that Plaintiff's counsel has acted in bad faith, the reasons offered by counsel for the delay are not plausible. First, there has been no explanation of why the March 14, 2014 deadline could not be met. Second, Plaintiff's counsel states he "believed that he filed the [request for the extension] electronically on March 14, 2014, but he must have either forgotten to do so or committed some error in the electronic filing which caused it not to be filed." (Doc. 19 at 2). The Court does not accept this explanation.

When one electronically files a document with the Court's Case Management/Electronic Case Files ("CM/ECF") system, a notice of electronic filing is generated and sent to registered counsel alerting them that the filing has occurred. *See* CDIL-LR 5.4(D). Plaintiff's counsel would have the Court believe that

5

his suspicion was not aroused by the absence of an NEF for the several days that passed between March 14, 2014 and March 27, 2014 when the Order and Opinion was filed. Counsel cannot be heard to argue that he does not check NEFs since he filed the instant motion to vacate only hours after the Court's March 27, 2014 Order and Opinion generated an NEF. The clear implication is that he received an NEF regarding the Order and Opinion and took action. So, he should have known his motion for an extension was never filed since no NEF was generated. Therefore, the Court finds that the means to rectify Plaintiff's counsel's error was squarely within his reasonable control, yet he failed to act diligently to correct his error. Only after this Court ruled upon the motion for summary judgment did counsel file a motion to attempt to correct his neglect.

This decision to enforce the Local Rules is well within the discretion of the Court. "In exercising discretion regarding enlargements of time, courts should be mindful that the rules are 'intended to force parties and their attorneys to be diligent in prosecuting their causes of action.' Deadlines, in the law business, serve a useful purpose and reasonable adherence to them is to be encouraged." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996) (quoting *Geiger v. Allen*, 850 F.2d 330, 331 (7th Cir.1988)).

In light of all the relevant circumstances, the Court denies Plaintiff's motions. The Seventh Circuit has repeatedly held that a district court is within its discretion to enforce the deadlines set by Local Rules and scheduling orders, including as to summary judgment motions, where the failure to respond is deemed an admission, by refusing to allow late filings. *Raymond*, 442 F.3d 600; *Gonzalez v.*

*Ingersoll Mill. Mach. Co.*, 133 F.3d 1025 (7th Cir. 1998); *Reales v. Consolidated Rail Corp.*, 84 F.3d 993 (7th Cir. 1996); *Spears*, 74 F.3d 153; *Wienco, Inc. v. Katahn Associates, Inc.*, 965 F.2d 565 (7th Cir. 1992). Refusing to excuse even an unforeseeable one-day delay is within the discretion of the trial court. *Reales*, 84 F.3d at 997; *Spears*, 74 F.3d at 156-57. Here, Plaintiff's counsel's delay in filing a response to the motion for summary judgment was not due to unforeseeable circumstances, but presumably his own failure to properly judge the amount of time needed to prepare. Furthermore, his delay in filing a request for an extension has no credible excuse.

Plaintiff's counsel has not shown extraordinary circumstances or even good cause for his delay in filing. He merely states that, "[o]n March 14, 2014, plaintiff's counsel, needing additional time to prepare the response, contacting [sic] defense counsel and asked if he would agree with a three week extension of time to respond…. Plaintiff believed that he filed the [request for an extension] electronically on March 14, 2014, but he must have either forgotten to do so or committed some error in the electronic filing which caused it not to be filed." (Doc. 20 at 1-2). This does not amount to excusable neglect.

As noted by our Circuit Court, "[w]hen parties wait until the last minute to comply with a deadline, they are playing with fire." *Spears*, 74 F.3d at 157. Failing to allow sufficient time to get a request for extension on file, is indeed "playing with fire." Plaintiff's counsel did not need a few days to file a response, he needed three weeks. Therefore he should have had the foresight to appreciate the need to request more time well in advance of the date the response was actually due.

7

This Court will not allow its deadlines or Local Rules to be ignored so cavalierly. Therefore, Plaintiff's "Motion for Leave to File Response to Defendant's Motion for Summary Judgment" is denied; Plaintiff may not file its untimely Response to Defendant's Motion for Summary Judgment.

The Court's decision is bolstered by its review of the Plaintiff's proposed response brief. In it, Plaintiff mischaracterizes deposition testimony and ignores facts and law that counter his propositions. For instance, Plaintiff argues that there is a genuine issue of material fact as to whether he was meeting Caterpillar's legitimate work expectations regarding grief[2] because according to him, zero grief is an unrealistic goal. (Doc. 20-1 at 11). Whether unrealistic or not, Plaintiff conceded that he was expected to have zero grief. The following exchange between Plaintiff and opposing counsel demonstrates that Plaintiff conceded Caterpillar expected the manufacturing engineer to have zero grief:

> Q. Okay. Okay. And I think you testified earlier that the goal and expectation with the grief was that there would be zero, right?
> A. That wasn't necessarily -- that was the hope to get MBM grief to zero. We wanted 1410 zero -- 1410 grief to be at zero, but it was a hope to not have any grief, but that being a goal would not be a realistic goal for MBM grief.
> Q. To have zero MBM grief?
> A. Yeah, that wouldn't be a realistic goal.
> Q. But the idea is that we want zero grief?

---

[2] Recall from the Court's March 27, 2014 Order & Opinion that "grief" occurs in Caterpillar's computer system when discrepancies exist between what the customer ordered and what the production employees are scheduled to build on the production line. If the manufacturing engineer's assessment of the parts, quantities, and materials needed for the assembly of a tractor does not match the customer's order, then grief is created. Caterpillar categorizes two types of grief: MBM grief and 1410 grief. MBM grief is all of the grief in the system for a particular build while 1410 grief is grief in the system that is closer to the build date. 1410 grief is the priority because it reflects errors and discrepancies in the system for builds that will soon come down the actual production line.

> A. Yeah, that's the idea.
> Q . I got you. It wasn't a realistic goal to have 1410 grief at zero, I take it?
> A. That could be a possibility.

(Doc. 17-1 at 22). Thus, there is no question Plaintiff's employer expected there to be zero grief. Plaintiff fails to address in his proposed response how any of Defendant's amounts regarding his grief or false or incorrect.[3] A genuine issue of fact would be created if Plaintiff asserted that his grief was not high, or was not materially different from other manufacturing engineers supervised by Ryan Rumler, but he failed to do so and he admitted in his deposition that the amount of grief and past due engineering change orders stated in his action plan and weekly updates were accurate. So, for example:

> Q. Okay. Again, would you agree with the next sentence which has to do with your grief statistics as of January 1, 2012, Myron had 5,790 lines of MBM grief and 682 lines of 1410 grief?
> A. Those ·· yes, those were the lines of grief.
> Q. Okay.
> A. I agree.

(Doc. 17-1 at 44).

Plaintiff also clearly misstates deposition testimony. On page 3 of his proposed response, Plaintiff disputes the fact that he had no issues with his 2010 annual performance evaluation (Doc. 17-2) and says he had numerous issues with

---

[3] Plaintiff even concedes his grief numbers were not meeting Caterpillar's expectations and were the basis for his evaluation. He writes: "Ryan Rumler learned-… that Myron Mint[sic] had a high grief level." (Doc. 20-1 at 6). He also writes the Rumler's 3-C evaluation of Plaintiff "was based upon the fact that Myron Mintz's grief did not come down by month to get to zero by the end of the year." (*Id.*).

9

it. Yet the deposition transcript confirms that he stated he did not have any issues with that particular evaluation:

> Q. Okay. Going back to Deposition Exhibit 11 Number 2 for a second --
> A. Okay.
> Q. -- which was your annual performance evaluation, I take it you didn't have any issue with your 3B, valued performance, rating; is that correct?
> A. No, not the -- yeah, I'm fine. Yes .

(Doc. 17-1 at 25).

Another glaring problem with the proposed response is that it fails to address whether a negative performance evaluation constituted an adverse employment action. In the Order and Opinion, this Court wrote as follows:

> The Seventh Circuit has held that a negative performance evaluation alone is not an adverse employment action for a discrimination claim unless it changes the terms or conditions of employment. *See de la Rama v. Illinois Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008). Plaintiff alleges the reviews resulted in him not being able to transfer or receive a promotion and pay increase. (Doc. 2 at 2). He does not contend that the performance evaluation led to a reduction in pay, a loss of job responsibilities, or any other meaningful change in the terms of his employment. In any event, Plaintiff is still employed by Caterpillar and he did receive a transfer to another department. On this record, the Court cannot conclude Plaintiff suffered an adverse employment action by receiving bad reviews.

(Doc. 18 at 14-15). Plaintiff responds by merely stating the issue is not disputed. (Doc. 20-1 at 10). He does not attempt to discuss the case cited by the Court or otherwise address the issue in his proposed response. Moreover, he cites nothing to counter the factual evidence that the ultimate outcome of his evaluations resulted in a lateral transfer with the same salary grade and same pay wage scale as his previous position. (Doc. 17-1 at 44). In other words, he has done nothing to show his evaluations and ultimate transfer affected him adversely.

Accordingly, the Court concludes that the proposed response (Doc. 20-1) would not alter the conclusions reached in its Order and Opinion (Doc. 18).

## CONCLUSION

In short, Plaintiff's counsel has not persuaded the Court that it should vacate its March 27, 2014 Order and Opinion or grant his out of time request to file a response brief. For the foregoing reasons, Plaintiff's Motion To Vacate This Court's Order Granting Summary Judgment, To Allow Myron Mintz To And Until April 4, 2014 To Respond To The Motion For Summary Judgment And/Or To File A Motion To Reconsider. (Doc. 19) and Motion To File Response To Motion For Summary Judgment Instanter (Doc. 20) are DENIED. IT IS SO ORDERED.

Entered this 14th day of April, 2014.

                                              s/ Joe B. McDade
                                              JOE BILLY McDADE

                                              United States Senior District Judge